James H. Bartolomei
(SBN 301678)
james@duncanfirm.com
**DUNCAN FIRM, P.A.**
809 W. 3rd Street
Little Rock, Arkansas 72201
Tel: (501) 228-7600
Fax: (501) 228-0415

Michael P. Manapol
(SBN 258300)
michael@manapollaw.com
**LAW OFFICES OF MICHAEL P. MANAPOL**
P.O. Box 252
Coppell, TX 75019
Tel: (310) 467-7283

Christopher J. Gansen (SBN 232133)
chris@gansenlawgroup.com
**GANSEN LAW GROUP, P.C.**
8335 Sunset Blvd., Suite 204
Los Angeles, California 90069
Tel: (424) 201-5625
Fax: (424) 214-1170

*Attorneys for Plaintiff*
*SOKOLSKYFILM, INC.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

SOKOLSKYFILM, INC.,

*Plaintiff*,

v.

LAUREN MESSIAH INC., and LAUREN MESSIAH

*Defendants*.

2:25-cv-07884-RGK-MBK

**PLAINTIFF SOKOLSKYFILM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT**

Judge: The Hon. R. Gary Klausner
Date: June 1, 2026
Time: 9:00 a.m.
Ctrm: 850

First Amended Complaint Filed: January 29, 2026
Trial Date: July 14, 2026

## TABLE OF CONTENTS

I. Introduction .......... 1
II. Statement of Facts .......... 1
III. Legal Standard .......... 8
IV. Argument .......... 8
A. Plaintiff Is Entitled to Summary Judgment on Copyright Ownership .......... 9
B. Plaintiff Is Entitled to Summary Judgment on Copyright Infringement .......... 14
C. Plaintiff Is Entitled to Summary Judgment on the CMI Claims .......... 15
D. The Undisputed Record Establishes Willful Infringement .......... 16
E. Plaintiff Is Entitled to Injunctive Relief and Attorney's Fees .......... 17
V. Conclusion .......... 17

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 8
*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337 (9th Cir. 1995) 8
*Celotex Corp. v. Catrett, 477 U.S. 317* (1986) .......... 8
*Dolman v. Agee,* 157 F.3d 708 (9th Cir. 1998) .......... 12
*Erickson Prods., Inc. v. Kast,* 921 F.3d 822 (9th Cir. 2019)
*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.,* 122 F.3d 1211 (9th Cir. 1997) .......... 9
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991) .......... 14
*Fischer v. Forrest,* 286 F. Supp. 3d 590 (S.D.N.Y. 2018) .......... 16
*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) .......... 17
*Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016) .......... 17
*Lin-Brook Builders Hardware v. Gertler*, 352 F.2d 298 (9th Cir. 1965) .......... 10, 11
*Mango v. BuzzFeed, Inc.*, 970 F.3d 167 (2d Cir. 2020) .......... 16
Peer *Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332 (9th Cir. 1990) .......... 16
*Playboy Enterprises, Inc. v. Dumas,* 53 F.3d 549 (2d Cir. 1995) .......... 12
*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,* 206 F.3d 1322 (9th Cir. 2000) .......... 10, 12

Statutes

17 U.S.C. § 106
17 U.S.C. § 410(c) .......... 9, 11
17 U.S.C. § 501
17 U.S.C. § 502 .......... 17, 18
17 U.S.C. § 504(c) .......... 18
17 U.S.C. § 505 .......... 17, 18
17 U.S.C. § 1202(a), (b), (c) .......... 15, 16

Rules

Fed. R. Civ. P. 70
L.R. 56-1 (C.D. Cal.)

# MEMORANDUM POINTS AND AUTHORITIES

## I. INTRODUCTION

This case presents a straightforward single-photograph copyright infringement and copyright management information ("CMI") claim supported by a complete evidentiary record. Defendant Lauren Messiah admitted that she copied an iconic fashion photograph created by the late Melvin Sokolsky — the "Parker Train" photograph — and displayed it on Defendants' commercial website for approximately fourteen years without license or authorization. When confronted with a cease-and-desist demand, Defendants described the claim as "stupid," vowed to ignore "law firms," destroyed the image file without preserving the metadata during this litigation, and redirected the image URL after suit was filed. Defendants' internal communications, produced in discovery and authenticated in deposition, establish willful infringement and CMI violations as matters of law.

Defendants' sole defense to Plaintiff's infringement and CMI claims is that McCall's magazine owned the copyright through a work-for-hire relationship under the 1909 Copyright Act. This defense fails for reasons that cannot be genuinely disputed: the Parker Train photograph was never published in McCall's magazine; it was never distributed to McCall's; McCall's never registered it; McCall's never possessed the original physical Chrome medium; McCall's never licensed it to anyone; and McCall's ceased operations in 2001 without ever asserting ownership. No McCall's successor has appeared in this litigation. Defendants' entire theory rests on a magazine purchased on eBay that does not contain the photograph at issue. No genuine disputes of material fact exist as to ownership of the photograph or liability. Summary judgment on these issues should be granted.

## II. STATEMENT OF FACTS

### A. Melvin Sokolsky and the Parker Train Photograph

Melvin Sokolsky was an internationally recognized fashion photographer whose work has been exhibited at the Museum of Modern Art, the Louvre, The

Getty, and the Victoria Albert museum. (Bing Sokolsky Decl. ¶ 2, Docket Entry 41-3.) By 1962 he was already a world-renowned photographer, with his photography appearing in Harper's Bazaar at age 21 and shortly thereafter in Esquire, Newsweek, and Show; his celebrated "Bubble" series would follow the next year. (Bing Sokolsky Decl. ¶ 2, Docket Entry 41-3.) Sokolsky created the "Parker Train" photograph — depicting model Suzie Parker aboard a train — through his own personal creative vision and artistic judgment, exercising sole creative control and without direction or supervision by any magazine publisher. (*Id.* ¶ 3.) He retained the original physical Chrome from creation through his death; it is now in Plaintiff's possession and has never been held by McCall's, its successors, assigns, or any third party. (*Id.* ¶ 4.) Sokolsky died in 2022. (*Id.* ¶ 1.)

The Parker Train photograph was never published in McCall's magazine at any time. (Bing Sokolsky Decl. ¶ 6, Docket Entry 41-3; October 1962 Issue of McCall's Magazine, Bartolomei Decl., Ex. F, Docket Entry 41-15.) Sokolsky first published the photograph in 2000 in his book *Seeing Fashion*, which he registered with the U.S. Copyright Office under his own name, with an effective date of June 30, 2000. (Copyright Registration No. TX 5-258-184, Bing Sokolsky Decl. ¶ 6, Ex. A, Docket Entry 41-4.) McCall's was still operating when Sokolsky published and registered the photograph in 2000 but tellingly took no action: it did not contest the publication, did not contest the registration, and made no legal claim. (*Id.,* ¶¶ 8, 10.) McCall's ceased publication with its March 2001 issue. (Bartolomei Decl., ¶ 15, Docket Entry 41-9.) In more than sixty years since the 1962 shoot, neither McCall's nor any parent, successor, assignee, or affiliated entity has ever registered, published, licensed, exploited, or asserted any ownership interest in the Parker Train photograph. (Bing Sokolsky Decl. ¶ 8, Docket Entry 41-3; Bartolomei Decl., ¶ 16, Docket Entry 41-9.)

Melvin Sokolsky formed Sokolskyfilm, Inc. during his lifetime to own, control, and license his photographic works. (Bing Sokolsky Decl. ¶ 5, Docket

Entry __.) Copyright Registration No. TX 5-258-184, with an effective date of June 30, 2000, was issued for *Seeing Fashion*, the book in which the Parker Train photograph was first published. (Copyright Registration No. TX 5-258-184, Bing Sokolsky Decl., ¶ 6, Ex. A, Docket Entry 41-4.) Following Melvin Sokolsky's death, all copyrights including TX 5-258-184 were formally assigned through the Sokolsky Family Trust estate proceedings. (Bing Sokolsky Decl. ¶ 14, Docket Entry 41-3.) By Assignment of Copyrights dated September 15, 2023, Bing Sokolsky — as successor in interest to Melvin Sokolsky and as Trustee of the Survivor's Trust under the Sokolsky Family Trust — assigned the copyrights, including TX 5-258-184, to the Bing Sokolsky GST Exempt Trust, of which Bing Sokolsky is Trustee. (Copyright Assignment dated September 15, 2023 [SOKOLSKY_000027–28], Bing Sokolsky Decl., ¶ 15, Ex. B, Docket Entry 41-5.) By Stock Assignment dated September 19, 2023, the 1,000 shares of common stock of Sokolsky Film, Inc. were transferred to the Bing Sokolsky GST Exempt Trust ("Trust"). (Stock Assignment dated September 19, 2023 [SOKOLSKY_000030], Bing Sokolsky Decl., ¶ 16, Ex. C, Docket Entry 41-6.)

By Assignment of Copyrights dated May 6, 2024, the Trust assigned all "rights, titles and interests" in the copyrights of Melvin Sokolsky's intellectual property, including the work at issue herein, to Plaintiff Sokolskyfilm, Inc. (Copyright Assignment dated May 6, 2024 [SOKOLSKY_000114–115], Bing Sokolsky Decl., ¶ 17, Ex. D, Docket Entry 41-7.) At all times relevant to this action, Plaintiff Sokolskyfilm, Inc. has been the owner of all rights, title, and interest in the Parker Train photograph and in Copyright Registration No. TX 5-258-184. Sokolskyfilm has actively licensed the photograph for more than two decades, including sales of authorized fine art prints for up to $5,000 each. (Bing Sokolsky Decl. ¶ 7, Docket Entry 41-3.)

**B. Defendants' Unauthorized Use of the Parker Train Photograph**

In November 2009, Defendant Lauren Messiah searched Google Images

using the term "army fashion," found the Parker Train photograph, right-clicked, and saved a copy to her desktop. (Messiah Dep. at 33:13–34:2, 37:2–38:2, Bartolomei Decl., Ex. I, Docket Entry 41-18.) The saved file was named "melvin-sokolsky5.jpg" — a filename she did not create, which came from the source website. (Messiah Dep. at 37:6–40:25, Bartolomei Decl., Ex. I, Docket Entry 41-18.) Messiah uploaded the photograph to her blog without any credit or copyright notice for Sokolsky. (Server Source Code, Bartolomei Decl., Ex. H at p. 30, Docket Entry 41-17.)

In 2011, all of Messiah's blog posts, including the subject post displaying the Parker Train photograph, were migrated to LaurenMessiah.com — a commercial website selling styling courses, coaching services, and books — with Messiah's approval and with no copyright review. (Messiah Dep. at 26:25–27:19, Bartolomei Decl., Ex. I, Docket Entry 41-18; Defendants' Interrogatory Responses [Response to Interrogatory No. 5, Bartolomei Decl., Ex. C at pp. 5-6, Docket Entry 41-12.) The photograph remained displayed there for over fourteen years. (Messiah Dep.at 54:8–11, Bartolomei Decl., Ex. I, Docket Entry 41-18.)

Lauren Messiah Inc. owns and operates LaurenMessiah.com and has generated, by Messiah's own admission, "millions and millions of dollars" in revenue. (Messiah Dep.at 16:22–17:16, Bartolomei Decl., Ex. I, Docket Entry 41-18.) Defendants never sought or received authorization from Plaintiff or Sokolsky to display the photograph on LaurenMessiah.com. (Defendants' Responses to Requests for Admission [RFA Nos. 5–6], Bartolomei Decl., Ex. D at p. 4, Docket Entry 41-13.)

### C. Defendants' Removal and Alteration of Copyright Management Information

When Messiah downloaded the Parker Train photograph from Google Images in November 2009, the digital image file bore the filename "melvin-sokolsky5.jpg," which included Melvin Sokolsky as identifying information about

the author of the work. (Messiah Dep.at 37:2–40:25, Bartolomei Decl., Ex. I, Docket Entry 41-18; Wayback Machine Captures and Server Source Code, Bartolomei Decl., Exs. G, H at p. 30, Docket Entries __.) Messiah admitted that her "eyes were open" when she right-clicked and saved the file, that a file name was visible on her screen when she did so, and that she did not create or rename that filename — it came from the source website from which the image had been downloaded. (Messiah Dep.at 37:25–38:20, 40:7–25, Bartolomei Decl., Ex. I, Docket Entry 41-18.) Messiah further admitted that a Google search for "Melvin Sokolsky" in 2009 would have returned information identifying him as the photographer of the image, and that she did not perform a search. (Messiah Dep.at 41:2–12, Bartolomei Decl., Ex. I, Docket Entry 41-18.)

When Messiah uploaded the photograph to her blog in November 2009, the file was saved to Defendants' server at the path "/wp-content/uploads/2009/11/melvin-sokolsky5.jpg," preserving Sokolsky's name in the hosted filename. (Wayback Machine Captures and Server Source Code, Bartolomei Decl., Exs. G, H at p. 30, Docket Entries 41-16 and 41-17.) The Internet Archive Wayback Machine captured Defendants' server hosting the image at that URL on November 24, 2010, and again on December 17, 2010. (*Id*., Ex. G, Docket Entry 41-16.) The HTML source code Plaintiff obtained regarding the subject post confirms that the image was hosted on Defendants' server under the filename "melvin-sokolsky5.jpg" throughout the life of the post. (Server Source Code, Bartolomei Decl., Ex. H at p. 30, Docket Entry 41-17.)

Despite hosting the file under a filename bearing Sokolsky's name, Defendants did not carry that identifying information over to the published blog post. (06/18/2025 Screen Capture, Bing Sokolsky Decl., ¶ 19, Ex. E [SOKOLSKY_000080-000085], Docket Entry 41-8.) The HTML image tag set the alt attribute — the descriptive text surfaced to screen readers, search engines, and other users — to the generic phrase "army fashion photography," with no reference

to Sokolsky. The image tag contains no <figcaption> element, no photo credit line, no copyright notice, and no hyperlink to any source. (Server Source Code, Bartolomei Decl., Ex. H at p. 30 [SOKOLSKY_000060], Docket Entry 41-17.) Messiah admitted that nowhere on the post is there any credit to Sokolsky. (Messiah Dep. at 52:9–53:1, Bartolomei Decl., Ex. I, Docket Entry 41-18.) The omission was deliberate, not technical: the immediately preceding blog post on the Defendants' website — "Edgy Fashion Accessories," dated November 25, 2009 — displayed a visible "Photo Credit—Rachael Christine" attribution beneath its featured image. (Server Source Code, Bartolomei Decl., Ex. H at p. 29 [SOKOLSKY_000059], Docket Entry 41-17.) Messiah further admitted that her practice was to provide a photo credit whenever she could identify the photographer, and that she had the ability to provide such credits on her website. (Messiah Dep. at 50:8–51:18, Bartolomei Decl., Ex. I, Docket Entry 41-18.) She nonetheless did not do so for the Parker Train photograph. (Messiah Dep. at 41:2–12, 52:20–22, Bartolomei Decl., Ex. I, Docket Entry 41-18.)

The photograph was published within a self-branded blog post in which Messiah appeared in the byline as the author and fashion expert, answering a reader's question as though the accompanying imagery were her own editorial content. (Server Source Code, Bartolomei Decl., Ex. H at p. 30, Docket Entry 41-17.) Messiah admitted the photograph was used as a "placeholder" with no commentary on or criticism of the image itself. (Messiah Dep. at 52:23–53:14, Bartolomei Decl., Ex. I, Docket Entry 41-18.) Plaintiff never authorized Defendants to remove, alter, or suppress any CMI associated with the photograph, or to display it in any manner. (Bing Sokolsky Decl., ¶ 11, Docket Entry 41-3.)

### D. Plaintiff's Cease and Desist Letter and Defendants' Response

On July 29, 2025, Plaintiff's counsel sent a cease-and-desist demand to Defendants. (Cease and Desist Letter, Bartolomei Decl., Ex. A, Docket Entry 41-10.) An autoresponder confirmed receipt the same day. (Messiah Dep.at 74:10–19,

Bartolomei Decl., Ex. I, Docket Entry 41-18.) Defendants' authenticated Slack communications reveal that Messiah described the claim as **"some stupid like copyright infringement thing for an old blog post,"** received physical mail about it **and "threw it in the trash cause usually these are all fake,"** and without consulting counsel directed: **"post has been deleted and these 'law firms' will be ignored."** (Defendants' Slack Communications [DF 009-4 through 009-6], Bartolomei Decl., Ex. E at pp. 4-6, Docket Entry 41-14 [emphasis added].) Those same communications confirm Defendants had previously received **"a lot of these, too many"** infringement notices and had "literally thousands" of unlicensed images on the website. (Defendants' Slack Communications [DF 009-7, 009-8], Bartolomei Decl., Ex. E at pp. 7-8 Docket Entry 41-14 [emphasis added].)

Despite deleting the post, Defendants allowed the image file to remain accessible at its direct URL. After Plaintiff filed this lawsuit, the URL was actively redirected through a deliberate server configuration change. (Messiah Dep.at 95:21–96:17, Bartolomei Decl., Ex. I, Docket Entry 41-18.) During the pendency of this litigation, Messiah directed the deletion of the digital image file from the server — confirmed by her own Slack message: **"That did it."** (Messiah Dep.at 96:12, Bartolomei Decl., Ex. I, Docket Entry 41-18 [emphasis added].) No forensic copy or digital preservation was made notwithstanding the preservation demand contained in the cease-and-desist letter. (Messiah Dep.at 70:10–22, Bartolomei Decl., Ex. I, Docket Entry 41-18; Messiah Dep.at 111:22–112:8, Bartolomei Decl., Ex. I, Docket Entry 41-18.)[1]

[1] After Defendant Messiah's deposition, Defendants' counsel emailed to Plaintiff a digital image of the subject photograph that purported to be the actual digital file that Ms. Messiah testified she deleted after she received Plaintiff's cease and desist letter and after this action was filed. Defendants' counsel represented to Plaintiff that the attached image was retrieved from Defendants' server by their IT department. The image's metadata showed it was created on March 27, 2026, the same day Defendants' counsel emailed it to Plaintiff. On April 27, 2026, Plaintiff's counsel requested that Defendants transmit the image via a file sharing platform to preserve the metadata so that Plaintiff could confirm it was the original image of the Parker Train photograph that Messiah uploaded to her blog in 2009. (04/27/26 Manapol Email,

### E. The Record is Devoid of any Evidence That McCall's Owned the Copyright in the Parker Train Photograph

The Parker Train photograph was never published in McCall's. (Bing Sokolsky Decl. ¶ 6, Docket Entry 41-3; October 1962 Issue of McCall's Magazine, Bartolomei Decl., ¶ 9, Ex. F at p. __, Docket Entry 41-15.) Defendant Messiah admitted as much under oath: "No, the exact photo did not" appear in the 1962 McCall's article. (Messiah Dep. at 85:16–22, Bartolomei Decl., Ex. I, Docket Entry 41-18.) McCall's never registered the photograph with the U.S. Copyright Office, never possessed the original Chrome necessary to reproduce it, never licensed it, and never asserted any ownership interest in it during the forty-plus years McCall's continued to operate after 1962. (Bing Sokolsky Decl. ¶ 8, Docket Entry 41-3; Bartolomei Decl., ¶ 15, Docket Entry 41-9.) Defendants' contention to the contrary rests entirely on a copy of the October 1962 issue of McCall's purchased on eBay by Defendants' counsel — *in which the Parker Train photograph appears nowhere.* (October 1962 Issue of McCall's Magazine, Bartolomei Decl., ¶ 9, Ex. F at p. __, Docket Entry 41-15.)

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it could affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could return a verdict for the nonmoving party. *Id.* Where a party bears the burden of proof on an issue, it must present evidence sufficient to establish every element; speculation and conjecture are insufficient. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995).

---

Manapol Decl., ¶ 6, Ex. A, Docket Entry 41-20.) As of the filing of this motion, Defendants' counsel has not responded to Plaintiff's counsel's email. (Manapol Decl., ¶ 7, Docket Entry 41-19.)

## IV. ARGUMENT

### A. Plaintiff Is Entitled to Summary Judgment on Copyright Ownership

#### 1. The copyright registration establishes *prima facie* ownership.

A certificate of registration timely made constitutes *prima facie* evidence of the validity of the copyright and the facts stated therein. 17 U.S.C. § 410(c). The first publication of the Parker Train photograph was in Melvin Sokolsky's photography book, *Seeing Fashion,* which was first published in 2000, and registered with the U.S. Copyright Office the same year. (Copyright Registration No. TX 5-258-184, Bing Sokolsky Decl., ¶ 6, Ex. A, Docket Entry 41-4.) This creates a presumption of validity that Defendants must rebut with competent evidence. *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997). As discussed previously herein and in further detail below, Defendants have no competent evidence sufficient to rebut this presumption despite their attack on ownership of the photograph throughout this action, driving up the costs.

#### 2. The chain of title for the Parker Train photograph is established by the executed assignment documents.

The copyright chain of title is established by uncontradicted documentary evidence. Melvin Sokolsky created the Parker Train photograph as an original work and held the copyright throughout his lifetime. Upon his death, all his rights in his copyrighted works, including the Parker Train photograph, passed through the Sokolsky Family Trust. By formal Assignment of Copyrights dated September 15, 2023 — executed by Bing Sokolsky as successor in interest to Melvin Sokolsky and as Trustee of the Survivor's Trust — all copyrights including TX 5-258-184 were assigned to the Bing Sokolsky GST Exempt Trust. (Copyright Assignment dated September 15, 2023, Bing Sokolsky Decl., Ex. B at pp. 2-4, Docket Entry 41-5.) That assignment was notarized in Los Angeles County on September 19, 2023. (*Id.*, at p. 4.) Simultaneously, the 1,000 shares of common stock of Sokolsky Film, Inc.

were transferred to the same trust. (Stock Assignment dated September 19, 2023, Bing Sokolsky Decl., ¶ 16, Ex. C, Docket Entry 41-6.)

By an Assignment of Copyrights dated May 6, 2024, the Bing Sokolsky GST Exempt Trust irrevocably transferred and assigned to Plaintiff "in perpetuity and throughout the world, all of the Trust's rights, titles and interests to all intellectual property created by Melvin Sokolsky, in whole, in part, or as modified or changed, in any and all media now known or hereafter created, together with all causes of action accruing before or during the term of the Assignment, including the right to receive and retain any proceeds." (May 6, 2024, Copyright Assignment, Bing Sokolsky Decl., Ex. D at p. 1, § 1 [SOKOLSKY 000114], Docket Entry 41-7.) The full chain of title for the Parker Train Photograph is documented and uncontroverted.

**3. Defendants' work made-for-hire argument fails.**

Defendants have asserted that McCall's owned the copyright under the 1909 Act's "instance and expense" test. The instance-and-expense inquiry turns on "whether the motivating factor in producing the work was the employer who induced the creation," and works "motivated by [the creator's] own desire for self-expression" are *not* works for hire. *Self-Realization Fellowship Church v. Ananda Church of Self-Realization,* 206 F.3d 1322, 1326 (9th Cir. 2000). The doctrine applies only to "traditional, hierarchical relationships" in which the hiring party had "the right to control or supervise the artist's work," and rests on the presumption that "the parties expected the employer to own the copyright and that the artist set his price accordingly." *Id.* at 1326–27 (internal citations omitted).

As a threshold matter, even if the 1909 Act applied, Defendants' ownership attack is misplaced on this record. The Parker Train photograph was created in 1962 but was not published until 2000. Under the 1909 Act, federal statutory copyright attached only upon publication with proper notice; unpublished works were governed by state common law copyright, which was preempted and federalized by

the 1976 Act effective January 1, 1978. *See* 17 U.S.C. § 303(a); *Lin-Brook Builders Hardware v. Gertler,* 352 F.2d 298, 300 (9th Cir. 1965).

Because Sokolsky published the work before December 31, 2002, the federal copyright runs at least through December 31, 2047. 17 U.S.C. § 303(a). Sokolsky first published and registered the photograph in 2000 in his own name — not McCall's or any of its successors — and the registration is entitled to a presumption of validity. *See* 17 U.S.C. § 410(c).

Even indulging Defendants' framing, as discussed previously herein and below, there is no evidence that the Parker Train photograph was created at the instance and expense of McCall's. Indeed, the undisputed record of the course of performance by Sokolsky and McCall's establishes that Sokolsky retained ownership of all of the photographs he took during the 1962 shoot.

**a. McCall's never published the photograph.**

Defendants' entire theory rests on the October 1962 issue of McCall's purchased on eBay by Defendants' counsel. But the Parker Train photograph does not appear anywhere in that issue or *any issue* of McCall's. (Bing Sokolsky Decl. ¶ 6, Docket Entry 41-3; October 1962 Issue of McCall's Magazine, Bartolomei Decl., ¶ 9, Ex. F at p. __, Docket Entry 41-15.) Messiah admitted this fact under oath. (Messiah Dep.at 85:16–22, Bartolomei Decl., Ex. I, Docket Entry 41-18.) A work-for-hire defense requires, at minimum, that the alleged commissioning party had some relationship to the specific work. Where the work never appeared in the publication, the defense has no foundation.

**b. There is no evidence that the subject photograph was created at the instance and expense of McCall's.**

The instance-and-expense test requires proof that McCall's actually requested and paid for this specific work. *Lin-Brook Builders Hardware* at 300. There is no evidence of any contract between McCall's and Sokolsky regarding the 1962 shoot; no evidence that McCall's paid Sokolsky for the unpublished images

from that shoot; and no evidence that Sokolsky assigned his copyright in those images. (Bing Sokolsky Decl. ¶ 13, Docket Entry 41-3.) Messiah admitted every one of these evidentiary gaps under oath. (Messiah Dep. at 80:2–82:18, 83:3–9, Bartolomei Decl., Ex. I, Docket Entry 41-18.) Where the party asserting a work-for-hire defense produces no evidence that the work was created at the instance and expense of the hiring party, the defense fails as a matter of law. *Dolman v. Agee*, 157 F.3d 708, 712 (9th Cir. 1998).

**c. Sokolsky's exclusive creative control over the 1962 shoot precludes any finding that the Parker Train photograph was created at the instance and expense of McCall's.**

The "instance" prong of the instance and expense test requires more than a paying commissioning relationship — it requires that the commissioning party actually initiated, directed, or controlled the work's creative execution. Courts applying the 1909 Act treat supervisory control over the creative process as the defining element. *Self-Realization Fellowship*, 206 F.3d at 1326–27 (doctrine confined to "traditional, hierarchical relationships" where the hiring party held "the right to control or supervise the artist's work"); *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 554 (2d Cir. 1995) (instance prong requires that the work be made at the "behest" of a party that exercised supervision and control over its creation); *Lin-Brook Builders Hardware v. Gertler*, 352 F.2d 298, 300 (9th Cir. 1965). Where the engaging party purchased an artist's independent creative vision — rather than directing execution of its own concept — the instance prong is not met. *Dolman v. Agee*, 157 F.3d 708, 712 (9th Cir. 1998).

Here, McCall's engaged Sokolsky as the photographer and director of the 1962 shoot because of his independent creative reputation. (Bing Sokolsky Decl. ¶¶ 2–3, Docket Entry 41-3.) Sokolsky was retained to conceive and control the shoot in its entirety; every compositional, lighting, directorial, and artistic decision was made exclusively by him, without direction, supervision, or control by any

publisher — consistent with his practice on every editorial shoot he undertook throughout his career. (*Id.* ¶¶ 3, 12.) Sokolsky's engagement with McCall's is exactly the type of relationship the Ninth Circuit identifies as incompatible with work-for-hire — an artist engaged for his creative autonomy rather than to carry out the hiring party's instructions.

**d. The Parties' course of performance confirms their understanding that Sokolsky retained ownership of the Parker Train photograph.**

McCall's and Sokolsky's course of performance confirms their mutual understanding that Sokolsky retained ownership of all images from the shoot. He retained the sole original Chrome throughout his lifetime and never delivered it to McCall's — which is precisely why McCall's never reproduced, licensed, or distributed the Parker Train photograph in more than forty years of subsequent operations. (Bing Sokolsky Decl. ¶¶ 4, 9, Docket Entry 41-3.) In 2000, while McCall's was still a going concern, Sokolsky published the photograph under his own name in *Seeing Fashion* without any objection or claim by McCall's, consistent with the industry understanding that photographers of Sokolsky's stature retained ownership of the copyrights in the photographs he created during the 1962 shoot. (*Id.* ¶¶ 6, 8, 12–13.) The course of dealing with other publications confirms the same understanding: Harper's Bazaar and comparable publications that actually published Sokolsky's photographs in the same era routinely return to Sokolskyfilm today to license those images — treating Sokolsky, not the magazine, as the copyright owner for photographs that appeared in their own pages. (*Id.* ¶ 12.) If a magazine that published Sokolsky's work recognizes him as the copyright holder, McCall's cannot seriously be said to have owned an outtake that it never published, never possessed, never licensed, and never asserted any claim to in sixty years.

**4. The undisputed record affirmatively establishes Sokolsky Film as the owner of the copyright in the Parker Train**

**Photograph.**

Beyond defeating Defendants' work made for hire defense, the record affirmatively proves Plaintiff's ownership of the Parker Train photograph. Sokolskyfilm possesses the only original physical Chrome of the photograph. (Bing Sokolsky Decl. ¶ 4, Docket Entry 41-3.) The copyright has been actively licensed for more than two decades, generating licensing revenue and print sales of up to $5,000 each. (Bing Sokolsky Decl. ¶ 7, Docket Entry 41-3.) The formal assignment chain from Melvin Sokolsky through the Sokolsky Family Trust is documented and uncontradicted. (Copyright Assignment dated September 15, 2023; Stock Assignment dated September 19, 2023; Copyright Assignment dated May 6, 2024, Bing Sokolsky Decl., Exs. B–D at pp. __, Docket Entry 41-5.) The only party that has ever conducted itself as the rightful and sole copyright owner of this photograph in more than sixty years is Melvin Sokolsky, his estate, and Plaintiff. Not McCall's.

### B. <u>Plaintiff Is Entitled to Summary Judgment on Infringement</u>

To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright and (2) copying of protected expression. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Both elements are undisputedly established here.

Ownership is established as discussed in Section IVA, *supra*. As to copying, Defendants' own admissions establish each element. Defendants admitted in their Requests for Admission that the image on their website "appears to be the same as" Plaintiff's photograph, that they never requested permission to use it, and that they received no license. (Defendants' Responses to Requests for Admission [RFA Nos. 1, 5, 6], Bartolomei Decl., Ex. D at pp. 2-4, Docket Entry 41-13.) Defendant Messiah confirmed these points under oath, admitting that she discovered the photograph through a Google Images search for "army fashion" in 2009 and saved it to her computer (Messiah Dep. at 33:13–34:2, Bartolomei Decl., Ex. I, Docket Entry 41-18); that she had no license or permission to use it (*Id.* at 47:16–21); that

the photograph was migrated to LaurenMessiah.com in 2011 with her approval and without any copyright review (*Id.* at 26:25–27:7); and that it remained displayed on that commercial website — which sells styling courses and coaching services — for approximately fourteen years (*Id.* at 54:8–11). Plaintiff never authorized any of this. (Bing Sokolsky Decl. ¶ 11, Docket Entry 41-3.) No reasonable jury could find otherwise.

### C. <u>Plaintiff Is Entitled to Summary Judgment on the CMI Claims</u>

#### 1. Section 1202(b) — Removal of CMI

Section 1202(b) prohibits intentional removal or alteration of CMI without the copyright owner's authority, where the person knows or has reasonable grounds to know the removal will induce, enable, facilitate, or conceal infringement. CMI includes "the name of, and other identifying information about, the author of a work." 17 U.S.C. § 1202(c)(2). Each element is satisfied here. The filename "melvin-sokolsky5.jpg" — which Defendants did not create and which came from the source website — embedded Sokolsky's name as CMI at the time of download. (Server Source Code CMI, Bartolomei Decl., Ex. H, Docket Entry 41-17.) Messiah admitted her eyes were open when she saved the file, and presumably saw this. (Messiah Dep. at 37:25–38:7, Bartolomei Decl., Ex. I, Docket Entry 41-18.) The source code of the image hosted on Defendants' server likewise contained Sokolsky's name. (Server Source Code, Bartolomei Decl., Ex. H at p. __, Docket Entry 41-17.) Despite this, Sokolsky's name appears nowhere in the published blog post — no credit, no copyright notice, no attribution. (Server Source Code, Bartolomei Decl., Ex. H at p. 30, Docket Entry 41-17; Messiah Dep. at 52:20–22, Bartolomei Decl., Ex. I, Docket Entry 41-18.) Defendants had no authority from Plaintiff to remove that attribution. (Bing Sokolsky Decl. ¶ 11, Docket Entry 41-3.)

Intent is established by Defendants' own Slack communications and Messiah's deposition admissions: Defendants knew the image came from a source attributing it to a photographer (the "melvin-sokolsky5.jpg" filename), made no

effort to include attribution in the post, and when confronted with a cease-and-desist letter vowed to delete and ignore it rather than investigate. (Defendants' Slack Communications, Bartolomei Decl., Ex. E at pp. 4-6, Docket Entry 41-14; Messiah Dep. at 37:25–38:7, 41:2–12, Bartolomei Decl., Ex. I, Docket Entry 41-18.) That satisfies the intent element. *See Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (§ 1202(b) violation established where defendant altered gutter credit and "should have known" the alteration would conceal infringement).

**2. Section 1202(a) — False CMI**

Section 1202(a) prohibits knowingly providing false CMI with intent to induce, enable, facilitate, or conceal infringement. 17 U.S.C. § 1202(a). By displaying the Parker Train photograph as branded content on a commercial website under Defendants' name, with no attribution to anyone else, Defendants presented the image as their own property — false attribution by contextual implication. *Fischer v. Forrest*, 286 F. Supp. 3d 590, 609 (S.D.N.Y. 2018). The same Slack evidence and deposition admissions that establish scienter under § 1202(b) establish scienter here as well. *See supra* § IV.C.1. At minimum, this is a triable issue of fact.

**D. The Undisputed Record Establishes Willful Infringement**

Willful infringement exists where the defendant knew its conduct constituted infringement or recklessly disregarded the copyright owner's rights. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 n.3 (9th Cir. 1990). The record compels this finding.

Defendants' own authenticated internal communications and Messiah's deposition admissions establish: (1) Messiah called this legitimate copyright claim "stupid"; (2) she received the cease-and-desist and threw physical correspondence in the trash; (3) she directed that "law firms" be ignored; (4) she deleted the post without any investigation; (5) her office had previously received "a lot of these, too many" infringement notices, treating them all as scams; (6) she acknowledged

"literally thousands" of images on the website without copyright clearance; and (7) she saw the filename "melvin-sokolsky5.jpg" when she downloaded the photograph in 2009 — Sokolsky's name in the file — and proceeded to exploit the image without inquiry for fourteen years. (Defendants' Slack Communications, Bartolomei Decl., Ex. E at pp. 4-8, Docket Entry 41-14; Messiah Dep.at 37:25–40:25, 109:18–22, Bartolomei Decl., Ex. I, Docket Entry 41-18.) After this lawsuit was filed, she destroyed the digital file during litigation despite being on actual notice of anticipated litigation and knowing that the digital photograph was relevant evidence. (Messiah Dep.at 95:21–96:17, 111:22–112:8, Bartolomei Decl., Ex. I, Docket Entry 41-18; 04/27/2026 Email, Manapol Decl., ¶¶ 4–7, Ex. A, Docket Entry 41-20.) The foregoing admissions foreclose any plausible claim of innocent or inadvertent infringement.

### E. <u>Plaintiff Is Entitled to Injunctive Relief and Attorney's Fees</u>

This Court may grant injunctive relief under 17 U.S.C. § 502 to prevent further infringement. Pursuant to 17 U.S.C. § 505, the Court may award reasonable attorney's fees to the prevailing party. Under the *Fogerty*/*Kirtsaeng* factors — degree of success, frivolousness, motivation, objective unreasonableness, and need for deterrence — fee-shifting is warranted here. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016). Defendants' work-for-hire ownership defense was objectively unreasonable from the outset, based on a magazine purchased on eBay that does not even contain the photograph at issue. Defendants' well-documented bad faith — destroying evidence during litigation, deliberately redirecting the URL, and systematically ignoring infringement notices — supports both compensation and deterrence. Only a trial on damages is necessary.

## V. <u>CONCLUSION</u>

There are no genuine disputes of material fact as to ownership, liability for infringement, CMI violations, or willfulness. Plaintiff respectfully requests that this

Court grant summary judgment on all claims addressed in this motion, find that statutory damages for willful or reckless copyright infringement are warranted and CMI violations pursuant to 17 U.S.C. §§ 504 and 1203, grant permanent injunctive relief pursuant to 17 U.S.C. § 502, and award attorney's fees and costs pursuant to 17 U.S.C. § 505.

Dated: April 28, 2026

Respectfully submitted,

DUNCAN FIRM, PA
LAW OFFICES OF MICHAEL P. MANAPOL

*/s/ Michael P. Manapol*
Michael P. Manapol
James H. Bartolomei, III
*Attorneys for Plaintiff*
*SOKOLSKYFILM, INC.*

**ATTESTATION PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Plaintiff Sokolskyfilm, Inc., certifies that the Memorandum Points and Authorities contains 5,447 words as counted by Microsoft Word, which complies with the word limit of L.R. 11-6.1. It also does not exceed 20 pages, pursuant to Section 6 of the Court's standing order.

DUNCAN FIRM, P.A.
LAW OFFICES OF MICHAEL P. MANAPOL
*/s/ Michael P. Manapol*
James H. Bartolomei III
Michael P. Manapol

*Attorneys for Plaintiff*
*SOKOLSKYFILM, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2026, a true and correct copy of the foregoing document was served on all counsel of record listed on the Court's ECF-CM electronic filing system, including to J. Curtis Edmondson at jcedmondson@edmolaw.com and Sally Robinson sallyr@edmolaw.com, counsel for Defendants.

*/s/Michael P. Manapol*
Michael P. Manapol