James H. Bartolomei
(CSB No. 301678)
james@duncanfirm.com
**DUNCAN FIRM, P.A.**
809 W. 3rd Street
Little Rock, Arkansas 72201
Telephone: (501) 228-7600
Fax: (501) 228-0415

Christopher J. Gansen (SBN 232133)
chris@gansenlawgroup.com
**GANSEN LAW GROUP, P.C.**
8335 Sunset Blvd., Suite 204
Los Angeles, California 90069
Tel: (424) 201-5625
Fax: (424) 214-1170

Michael P. Manapol
(SBN 258300)
michael@manapollaw.com
**LAW OFFICES OF MICHAEL P. MANAPOL**
P.O. Box 252
Coppell, TX 75019
Tel: (310) 467-7283

*Attorneys for Plaintiff SOKOLSKYFILM, INC.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

SOKOLSKYFILM, INC.,

*Plaintiff,*

v.

LAUREN MESSIAH INC., and LAUREN MESSIAH

*Defendant.*

2:25-cv-07884-RGK-MBK

**DECLARATION OF BING SOKOLSKY IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

**Date:** June 1, 2026
**Time:** 9:00 a.m.
**Judge:** Honorable R. Gary Klausner
**Courtroom:** 850

First Amended Complaint
Filed: January 29, 2026
Trial Date: July 14, 2026

I, Bing Sokolsky, declare as follows:

1. I am a cinematographer and the son of the late Melvin Sokolsky, who passed away in 2022. I am Trustee of the Bing Sokolsky GST Exempt Trust under the Sokolsky Family Trust dated November 3, 1989, as amended, and I own and operate Plaintiff Sokolskyfilm, Inc. I make this declaration based on my own personal knowledge. If called as a witness, I could and would testify competently to the matters set forth herein.

2. My father, Melvin Sokolsky, was an internationally recognized fashion photographer, cinematographer, and director. His work has been exhibited at the Museum of Modern Art in New York, the Louvre in Paris, The Getty in Los Angeles, and the Victoria Albert in London, among others, and he is recognized throughout the fashion and fine arts community as a master of his craft. By 1962, when he created the Parker Train photograph at issue this case, my father was already a world-renowned photographer of exceptional independent stature. At the age of 21, his photographs appeared in Harper's Bazaar, and shortly thereafter he produced major editorial work for Esquire, Newsweek, and Show. The following year — 1963 — he produced his celebrated "Bubble" series for Harper's Bazaar, depicting fashion models floating in clear plastic bubbles suspended above the River Seine in Paris, a series that has since been widely recognized as a landmark of twentieth-century fashion photography.

3. My father created the photograph at issue in this litigation — the "Parker Train" photograph — as part of an original series of fashion images that he conceived, directed, and authored. The Parker Train photograph depicts model Suzie Parker aboard a train. It reflects my father's original creative expression in composition, lighting, direction, and vision. He exercised sole creative control over the photograph's conception, direction, and execution, consistent with his practice on all of his projects at that time and throughout the rest of his career. The photograph was created through his personal creative vision and artistic judgment,

not through direction, supervision, or control by any magazine publisher.

4. In the photographic parlance of my father's era, the equivalent of a film negative for color transparency work is called a chrome. My father retained the original physical chrome of the Parker Train photograph ("Chrome") from the time of its creation in 1962 until his death in 2022. The Chrome has never been in the possession of McCall's magazine, any McCall's successor, or any other third party. At all times relevant to this lawsuit, Sokolskyfilm, Inc. has possessed the original Chrome.

5. Melvin Sokolsky formed Sokolskyfilm, Inc. during his lifetime as the entity through which he owned, controlled, and licensed his photographic works, including the Parker Train photograph. I have been involved with the operations of Sokolskyfilm and the licensing of my father's photographic works for the last twenty years. I am the President/CEO of Sokolskyfilm, Inc. in its capacity as the licensing and rights enforcement entity for my father's photographic works.

6. The Parker Train photograph was never published in McCall's magazine at any time. It was first published in 2000 in my father's book *Seeing Fashion*, a retrospective of his fashion photography that featured outtakes and previously unreleased images from prior shoots for various fashion magazines, including Harper's Bazaar and McCall's. Copyright Registration No. TX 5-258-184 was issued for *Seeing Fashion* — the book in which the Parker Train photograph was first published — with an effective registration date of June 30, 2000. A true and correct copy of the copyright registration certificate for *Seeing Fashion* is attached hereto as **Exhibit A**.

7. Sokolskyfilm has actively licensed the Parker Train photograph for more than two decades. Authorized fine art prints have been sold for prices up to $5,000 each. Sokolskyfilm derives ongoing revenue from licensing fees for print edition sales of this photograph. The unauthorized display of this photograph on a commercial website for approximately fourteen years — in connection with a

business generating substantial revenue — directly harmed Sokolskyfilm's licensing market through the devaluation of future print edition sales and the damage to Melvin Sokolsky's legacy, as his works are not licensed for commercial uses.

8. In the more than sixty years since my father created the Parker Train photograph, McCall's magazine has never contacted my father, the Sokolsky Family Trust, the Bing Sokolsky GST Exempt Trust, or Sokolskyfilm, Inc. to assert any ownership interest in the photograph.

9. McCall's never registered the Parker Train photograph with the United States Copyright Office. McCall's never licensed the Parker Train photograph because all licenses of this photograph have been issued by my father or by Sokolskyfilm, exclusively. McCall's never possessed the original Chrome of the Parker Train photograph, or any original medium from which it could be reproduced.

10. Based on media reports at the time, it is my understanding that McCall's ceased publication with its March 2001 issue. No successor or any entity related to McCall's has ever contacted us, asserted an ownership interest in the Parker Train photograph, or appeared in this litigation to claim any interest in the photograph.

11. Neither my father, his estate, the Sokolsky Family Trust, the Bing Sokolsky GST Exempt Trust, nor Sokolskyfilm, Inc. have ever authorized Defendants Lauren Messiah or Lauren Messiah, Inc. to copy, display, distribute, or otherwise use the Parker Train photograph. No license was ever issued to Defendants. Defendants never contacted Sokolskyfilm to request permission to use the Parker Train photograph. Sokolskyfilm never received payment or any other consideration from Defendants in connection with their use of the photograph. Plaintiff never authorized Defendants to remove, alter, or suppress any copyright management information associated with the photograph, or to display it in any

manner whatsoever.

12. Based on my personal knowledge of my father's photographic practice and of the industry in which he worked in the 1960s, my father retained ownership of all photographs from his editorial shoots for various periodicals during that era. My father retained the chromes and physical negatives of all photographs from his editorial shoots throughout his career, which included the images selected for publication and outtakes alike, and he treated them as his own copyrightable works. His later publication of *Seeing Fashion* in 2000, which included outtakes from prior editorial shoots for various magazines like Harper's Bazaar and McCall's, including the Parker Train photograph, was consistent with that practice and with the industry understanding that a photographer of his stature retained ownership of the photographs they created during those shoots. Indeed, magazines such as Harper's Bazaar, routinely contact Sokolskyfilm to obtain licenses to re-publish my father's photographs that previously appeared in their publications.

13. To the best of my knowledge, based on my review of my father's and Sokolskyfilm's business records, my father did not enter any written contract with McCall's magazine or any related entity regarding the 1962 photo shoot that produced the Parker Train photograph, and no such contract exists in my father's or Sokolskyfilm's records. Likewise, neither my father nor Sokolskyfilm assigned or licensed any rights in the Parker Train photograph or in any other frame from that shoot to McCall's that it did not select for publication.

14. Following my father's death in 2022, the administration of his estate was handled by Weinstock Manion in Los Angeles. M. Neil Solarz, a California Certified Specialist in Estate Planning, Trust, and Probate Law, served as counsel. By letter dated January 25, 2024 (SOKOLSKY_000026), Mr. Solarz confirmed the conclusion of the estate administration and transmitted to me the signed, original documents effecting the transfer of my father's copyrights, including TX 5-258-184, through the Sokolsky Family Trust estate proceedings. A true and correct copy

of Mr. Solarz's January 25, 2024, correspondence is attached hereto as **Exhibit B, page 1**.

15. By Assignment of Copyrights, Residuals, Royalties, Contractual Payments and Other Rights dated September 15, 2023 (SOKOLSKY_000027–28), I — as successor in interest to Melvin Sokolsky and as Trustee of the Survivor's Trust under the Sokolsky Family Trust — transferred to the Bing Sokolsky GST Exempt Trust all copyrights then held, including the copyright identified as "Copyright — Essay & Photos — *Seeing Fashion* (TX 5-258-184)" — the registration that covers the Parker Train photograph. The assignment covers all rights, title, and interest worldwide, including the right to enforce the copyright against infringers. The assignment was notarized in Los Angeles County on September 19, 2023. A true and correct copy of the Copyright Assignment is attached hereto as **Exhibit B**.

16. By Stock Assignment Separate from Certificate dated September 19, 2023 (SOKOLSKY_000030), I transferred, in my capacity as Trustee of the Survivor's Trust, all 1,000 shares of common stock of Sokolsky Film, Inc. to the Bing Sokolsky GST Exempt Trust. As Trustee of the GST Exempt Trust, I therefore hold 100% of the stock of Sokolskyfilm, Inc. A true and correct copy of the Stock Assignment is attached hereto as **Exhibit C**.

17. By Assignment of Copyrights dated May 6, 2024 (SOKOLSKY_000114–115), the Bing Sokolsky GST Exempt Trust assigned all "rights, titles and interests" in the copyrights of Melvin Sokolsky's intellectual property, including Copyright Registration No. TX 5-258-184 covering the Parker Train photograph, to Plaintiff Sokolskyfilm, Inc. A true and correct copy of the May 6, 2024 Copyright Assignment is attached hereto as **Exhibit D**.

18. As a result of the assignment chain described in Paragraphs 14 through 17 herein, Plaintiff Sokolskyfilm, Inc. is the owner of all rights, title, and interest in Copyright Registration No. TX 5-258-184, including the Parker Train photograph,

and holds the right to enforce the copyright against infringers. As the owner of Sokolskyfilm, I authorized this litigation to be brought in the name of Sokolskyfilm, Inc. and affirm that all rights necessary to support the claims in this action are held by Sokolskyfilm, Inc.

19. Sokolskyfilm employs Titan Copyright as its agent to identify unauthorized use of Sokolskyfilm's photographic works. On June 18, 2025, Titan Copyright identified the Parker Train photograph as being displayed without authorization on LaurenMessiah.com, and on the same day, downloaded screen captures of the page of Defendants' website where the image was published without Sokolskyfilm's authorization. True and correct copies of the screen shots dated June 18, 2025, of Defendants' unauthorized use and publication of the Parker Train photograph that Titan Copyright provided to me are attached hereto as **Exhibit E** and were provided to my counsel to evaluate a claim.

20. After reviewing the evidence of infringement, Sokolskyfilm's counsel sent a cease-and-desist demand via email to Defendants on July 29, 2025, which was received and acknowledged that same day. Defendants did not take the photograph down voluntarily and did not respond within the demanded period. This litigation followed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 28, 2026, at Los Angeles, California.

Bing Sokolsky

BING SOKOLSKY

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2026, a true and correct copy of the foregoing document was served on all counsel of record listed on the Court's ECF-CM electronic filing system, including to J. Curtis Edmondson at jcedmondson@edmolaw.com and Sally Robinson sallyr@edmolaw.com, counsel for Defendants.

*/s/Michael P. Manapol*
Michael P. Manapol