UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07884-RGK-MBK | | Date | June 16, 2026 |
|---|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiff's Motion for Partial Summary Judgment [41]; Plaintiff's Motion to Strike Defendant's Expert Report [47]; Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment [48]**

## I.    INTRODUCTION

This action arises from a photograph taken in the 1960's (the "Parker Train Photo"). On January 29, 2026, Sokolsky Film, Inc. ("Plaintiff") filed the operative First Amended Complaint ("FAC") against Lauren Messiah, Inc. and Lauren Messiah (collectively, "Defendants"), alleging (1) copyright infringement under 17 U.S.C. §§ 106 and 501; and (2) violations of the integrity of copyright management information ("CMI") under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1202 and 1203. (ECF No. 38.)

Presently, Plaintiff and Defendants filed competing Motions for Partial or Complete Summary Judgment. (ECF Nos. 41, 48.) Plaintiff also filed a Motion to Strike Defendant's Expert Report. (ECF No. 47.) Based on the following, Plaintiff's Motion for Partial Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion to Strike Defendant's Expert Report is **DENIED** as **moot**.

## II.    FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted:[1]

Melvin Sokolsky (the "Photographer") was an internationally recognized fashion photographer whose work has been exhibited at the Museum of Modern Art and the Louvre. (*See* Defs.' Statement of

---

[1] The parties make numerous objections to the evidence presented in support of and opposition to the Motions. To the extent the Court relies upon evidence to which the parties have objected, the objections are **OVERRULED**. To the extent the Court does not rely upon evidence to which the parties have objected, the objections are **DENIED** as moot.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07884-RGK-MBK | Date | June 16, 2026 |
|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | |

Genuine Disputes ("DSGD") ¶ 1, ECF No. 50-1.)[2] In or around October 1962, the Photographer took the Parker Train Photo as part of a photoshoot (the "Photoshoot"). (Defs.' Resp. to Pl.'s Statement of Genuine Disputes ("DRPS") ¶ 1, ECF No. 56-11.) The Parker Train Photo is shown here:



(FAC ¶ 23.) The parties do not have any financial or expense documentation or other records of the Photoshoot. (DRPS ¶ 18.)

McCall's Magazine ("McCall's"), a women's magazine, published a fashion advertisement entitled "Cloak and Swagger Fashions" to sell women's clothing and accessories through a photographic spread. (DRPS ¶¶ 2–3; Excerpts from McCalls Magazine ("Magazine") at 3, Ex. 1, ECF No. 48-5.) The "Cloak and Swagger" advertisement featured a photograph from the Photoshoot but did not feature the Parker Train Photo. (*Id.*) A similar photo from the Photoshoot was featured:



---

[2] Plaintiff did not file a responsive statement to Defendant's Statement of Genuine Disputes. (*See generally* ECF Nos. 54, 55.)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-07884-RGK-MBK | Date | June 16, 2026 |
|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | |

(Magazine at 4.) The advertisement states that "McCall's Presents" the advertisement and notes that the Photoshoot was "[p]hotographed and directed by Melvin Sokolsky" and "[p]roduced by McCall's Fashion Department; Virginia Steele, editor." (Magazine at 3.) Additionally, Otto Storch was listed as the Art Director. (*Id.* at 2.) The Photographer retained a physical chrome film, the positive transparency or, in other terms, the slide film, of the Parker Train Photo. (DSGD ⁋ 4.) The parties dispute as to whether this chrome is the original or a copy thereof. (*See id.*)

There is no evidence that McCall's ever published or asserted ownership of the Parker Train Photo. (DSGD ⁋⁋ 15, 23.) In 2001, McCall's ceased operations. (*Id.* ⁋ 24.)

In August 1982, the Photographer formed Plaintiff to control and license his intellectual property. (DRPS ⁋ 4.) As of the filing of these Motions, Plaintiff has possession of the chrome, but has no other negatives, positive prints, or photographer notes for the Parker Train Photo or the Photoshoot. (*Id.* ⁋ 19.)

In 2000, *Melvin Sokolsky: Seeing Fashion* ("*Seeing Fashion*"), a book compiling photos including the Parker Train Photo, was published. (*Id.* ⁋ 6; *Seeing Fashion*, Ex. 2, ECF No. 48-6.) *Seeing Fashion* contained the Parker Train Photo. (*Id.*) Subsequently, *Seeing Fashion* was registered with the U.S. Copyright Office under the Photographer's name, with an effective date of June 30, 2000. (*See* DSGD ⁋ 6; Copyright Registration No. TX 5-258-184, Ex. A, ECF No. 41-4.)

In 2022, the Photographer died. (DRPS ⁋ 11.) Afterwards, *Seeing Fashion* was assigned to Bing Sokolsky, the successor in interest to the Photographer, and Trustee of the Survivor's Trust. (DSGD ⁋ 8.) On May 6, 2024, Bing Sokolsky assigned the copyrights of the Photographer's intellectual property to Plaintiff. (*Id.* ⁋ 11.)

As the owner and operator of Plaintiff, Bing Sokolsky has declared that Plaintiff has actively licensed the Parker Train Photo for more than two decades, authorizing fine art prints for up to $5,000 each. (*Id.* ⁋ 13.) Plaintiff published the Parker Train Photo on its website without a watermark. (FAC ⁋ 28.) No written agreement exists through which McCall's assigned any copyrights of photographs to the Photographer or Plaintiff. (DRPS ⁋⁋ 5, 17.) Additionally, McCall's never registered a copyright in the Parker Train Photo with the U.S. Copyright Office. (DSGD ⁋ 18.)

In November 2009, Messiah searched Google Images using the term "army fashion" and found the Parker Train Photo. (DSGD ⁋ 30.) Messiah recalls that she looked for a watermark on the image but did not see one, and she did not know the original host of the Photo beyond getting it from Google Images. (L. Messiah Decl. ⁋ 7, ECF No. 48-2.) She right-clicked and saved the Parker Train Photo to her desktop with the filename "melvin-sokolsky5.jpg," which came from the source website. (DSGD ⁋ 31.) Messiah did not alter the Photo. (L. Messiah Decl. ⁋ 7.) It is undisputed that this filename embedded the Photographer's name as identifying CMI. (DSGD ⁋ 42.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07884-RGK-MBK | Date | June 16, 2026 |
|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | |

The filename was visible on Messiah's screen when she saved the file, and she did not create or rename the file. (*Id.* ¶¶ 32, 47.) In 2009, Messiah did not know who the Photographer was. (*Id.* ¶ 48.) Messiah did not conduct research to identify the Photographer of the Parker Train Photo, and she testified that she did not know that the name listed in the filename was the Photographer. (*Id.* ¶ 33; L. Messiah Dep. 41:10–16, Ex. I, ECF No. 41-18.)

After downloading the Parker Train Photo, Messiah published it to her blog, "Ask Fashion Kitty," in a post entitled, "Style Suggestions for Army Wives," without any credit, attribution, or copyright notice that referenced the Photographer. (DRPS ¶ 9; DSGD ¶ 34.) Additionally, Messiah did not obtain any license or permission to use the Parker Train Photo. (DSGD ¶ 35.) The blog post included the Parker Train Photo above "question and answer" content, in which an "Army Wife" asked how she should dress when greeting her husband coming back from deployment, and Messiah responded with tips on what to wear. (FAC ¶ 42.) She selected that Photo because it "seemed to fit close enough to [her] post." (Messiah Decl. ¶ 7.)

Messiah has testified that her practice was to provide a photographer credit when she could identify the photographer, and that she had the ability to do so on her website. (DSGD ¶ 52.) In fact, the blog post immediately preceding the post featuring the Photo displays another photo with a visible attribution to the photographer beneath the image. (*Id.* ¶ 51.)

In 2011, all posts from "Ask Fashion Kitty" were migrated to LaurenMessiah.com, a commercial website through which Messiah markets and sells styling courses, coaching services, and books. (*Id.* ¶¶ 37, 38.) Over the course of her career, Messiah has made millions of dollars from her businesses. (Messiah Dep. 16:22–24.) In 2019, Lauren Messiah Inc. was formed. (DRPS ¶ 10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07884-RGK-MBK | | Date | June 16, 2026 |
|---|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | | |

The blog post remained on LaurenMessiah.com until August 2025, (DSGD ¶ 39), and appeared as follows:



(FAC ¶ 42.) In 2025, Plaintiff saw the Parker Train Photo on Defendants' website. (FAC ¶ 41.) Plaintiff alleges, and Defendants do not dispute, that the Parker Train Photo was displayed on Defendants' website with the following links: https://laurenmessiah.com/2009/11/style-suggestions-for-army-wives/ and https://laurenmessiah.com/wp-content/uploads/2009/11/melvin-sokolsky5.jpg. (*Id.* ¶ 42.) Plaintiff has never authorized Defendants to copy, display, distribute, otherwise exploit the Parker Train Photo. (DSGD ¶ 14.)

On July 29, 2025, Plaintiff's counsel sent a cease-and-desist demand letter to Defendants, identifying the Parker Train Photo on Defendants' website as infringing on Plaintiff's copyright and demanding the Photo be taken down and that Defendants preserve all digital files and metadata. (*Id.* ¶ 55.) Defendants' assistant dismissed the cease-and-desist as spam, deleted it, and did not forward it to Messiah. (*Id.* ¶ 57.) Defendants' authenticated Slack communications confirm that Messiah described the copyright claim as "some stupid like copyright infringement thing for an old blog post." (*Id.* ¶ 58.) Messiah directed that the blog post be deleted, however, the digital image file remained accessible at its direct URL. (*Id.* ¶¶ 60, 64.)

On August 15, 2025, Plaintiff's counsel sent a follow-up email notifying Defendants that the Parker Train Photo remained displayed, that its continued use was evidence of willful infringement, and litigation action would be taken. (*Id.* ¶ 61.) During the litigation of this case, Messiah directed the deletion of the digital image file and its cached copies from Defendants' server, preserving the image with screenshots. (*Id.* ¶¶ 65, 66.) Defendants had no litigation hold policy. (*Id.* ¶ 67.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07884-RGK-MBK | | Date | June 16, 2026 |
|---|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | | |

As of September 8, 2025, Messiah had thousands of images on her website, and although she had copyright clearance for some, she did not know which photos had a copyright or not. (Messiah Dep. 110:6–15.) Messiah has since removed the blog posts, including any posted images. (Messiah Dep. 111:1–11.)

### III.    JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56(a), a court may grant summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" only if dispute about them may affect the outcome under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

On issues where the moving party does not have the burden of proof at trial, the moving party is required to show that no evidence supports the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To defeat a summary judgment motion, the nonmoving party may not merely rely on his pleadings or on conclusory statements. *Id.* at 324. Nor may the nonmoving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Rather, the nonmoving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324. When evaluating evidence at the summary judgment stage, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

### IV.    DISCUSSION

In its Motion for Partial Summary Judgment, Plaintiff contends there are no genuine disputes of material fact as to any of its causes of action, and the only remaining issue at dispute is the damages amount. In their competing Motion for Summary Judgment, Defendants argue they are entitled to summary judgment on all claims.

For the alleged copyright claims, copyright ownership of the Parker Train Photo is an essential element. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (noting ownership of copyrighted work is a required element); *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) ("[T]he Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf.") (internal quotation marks omitted). The parties disagree as to whether Plaintiff or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07884-RGK-MBK | Date | June 16, 2026 |
|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | |

McCall's owns the Parker Train Photo.[3] Regardless, the Court need not address this issue because the undisputed record establishes that the causes of action fail on other grounds.

### A.    Copyright Infringement

To succeed on a copyright infringement claim, Plaintiff must prove Defendants copied "the constituent elements of the work that are original." *Feist Publ'ns, Inc.*, 499 U.S. at 361. Defendants do not dispute that they indeed used a copy of the Parker Train Photo on the blog without authorization from Plaintiff or any other entity. Instead, Defendants argue there is no genuine dispute that the blog post publishing the Photo constitutes fair use.

Whether an item qualifies for fair use is a mixed question of law and fact. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012). Courts often adjudicate these issues on summary judgment when there are no genuine issues of material fact. *See, e.g., id.*; *L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1120 (9th Cir. 1997). The party asserting fair use bears the burden of proof. *Monge*, 688 F.3d at 1170 (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 561 (1985)).

The Copyright Act of 1976 states that "the fair use of copyrighted work . . . for purposes such as criticism, comments, news reporting, teaching . . . is not an infringement of copyright." 17 U.S.C. § 107. To determine whether an item qualifies as fair use, courts examine the following factors:

(1) purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.* "All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). The Ninth Circuit has observed how the "fair use analysis can be elusive to the point of approaching the metaphysics of the law, where the distinctions are very subtle and refined, and, sometimes, almost evanescent." *Dr. Seuss Enters., L.P. v.*

---

[3] Plaintiff contends it is the owner as it owns the copyright for *Seeing Fashion*. Defendants argue McCall's is the owner because the Parker Train Photo was taken as a work for hire in the Photoshoot for McCall's advertisement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07884-RGK-MBK | Date | June 16, 2026 |
|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | |

*ComicMix LLC*, 983 F.3d 443, 451 (9th Cir. 2020). Nevertheless, this Court perseveres with its analysis to determine if a genuine dispute of material fact exists as to Defendants' affirmative fair use defense.

   1.   *Purpose and Character of the Use*

The first statutory factor examines "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). "The 'central' question [the first factor] asks is whether the new work merely 'supersedes the objects' of the original creation, or instead adds something new, with a further purpose or different character," and is therefore transformative. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) (internal quotation marks omitted) (cleaned up). Under this factor, transformative work is indicative of fair use. *See id.* The Ninth Circuit recognizes how this factor has taken on a "heightened significance" as the third and fourth fair use factors are influenced by this factor's analysis. *ComicMix LLC*, 983 F.3d at 451.

This factor balances whether the use of the copyrighted work has a further purpose or different character against the commercial nature of the use. *Andy Warhol Found. for the Visual Arts, Inc.*, 598 U.S. at 532. "If an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying." *Id.* at 532–33. On the other hand, "a use that has a distinct purpose is justified because it furthers the goal of copyright, namely, to promote the progress of science and the arts, without diminishing the incentive to create." *Id.* at 531. Although the commercial nature of the use is not dispositive, it tends to weigh against a finding of fair use." *Id.* at 537.

When considering the record of this case, the Court is guided by Ninth Circuit precedent that arose from a case that concerned the use of a video of an attack. The Ninth Circuit found that simply reposting creative content, like rebroadcasting the video of the attack in a news report, or adding surface-level alterations, like a voiceover to the video, is not transformative. *See L.A. News Serv. v. Reuters Television Int'l*, 149 F.3d 987, 993 (9th Cir. 1998); *L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997). However, "arrangement of a work in a photo montage . . . can be transformative where copyrighted material is incorporated into other material." *Monge*, 688 F.3d at 1174; *see also L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 929 (9th Cir. 2002) (holding that using a clip of the video in an edited promotional trailer was transformative and fair use). In contrast, publishing stolen photos of a celebrity wedding in an article with some written commentary about the wedding did not transform the photos into new work because the "inherent character of the images [was] unchanged" and the photos were not "part of a broader work." *Monge*, 688 F.3d at 1169, 1176 (holding the article publishing stolen photos of the wedding was not transformative and fair use).

Applying these teachings here, the Court finds Defendants' blog post was indeed transformative. Plaintiff claims Defendants' blog post with the Parker Train Photo infringes upon *Seeing Fashion*, a

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-07884-RGK-MBK | Date | June 16, 2026 |
|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | |

book compiling the Photographer's photos. The book appears to be an anthology of the Photographer's work, without written commentary concerning fashion or related creative trends. Although Defendants used the exact, unaltered Parker Train Photo in the blog post, it was published alongside question-and-answer commentary providing fashion advice to a blog reader about what she should wear to greet her husband upon return from deployment. (*See* FAC ⁋ 42.) The writing in the blog post provides fashion guidance rather than commentary on what is already apparent from the Photo and thus does more than the wedding commentary in *Monge* or the voiceover in *KCAL-TV*. Accordingly, the Parker Train Photo is part of a broader work as published in the blog and accompanies fashion guidance, rather than being part of an anthology of the Photographer's work.

Plaintiff argues that the commercial nature of Defendants' website, through which they have earned revenue, weighs this factor against a finding of fair use. However, Messiah clarified that her estimated revenue was not tied to her blog posts, like the one at issue here, but rather stemmed from her styling courses, coaching services, and books. There is no evidence in the record of any revenue or commercial benefit earned from the blog or, more specifically, the Parker Train Photo blog post. Nonetheless, assuming Defendants obtained some commercial benefit from the blog post, the transformative nature of the work reduces the importance of that commercial purpose. *See CBS Broadcasting*, 305 F.3d at 940 ("At the same time, though, the opening montage was the more 'transformative' of the allegedly infringing uses, which in turn reduced the importance of the commerciality of the use.").

Therefore, after considering the blog post's transformative nature and potential commercial purpose, the Court finds that, on balance, the first factor weighs in favor of fair use.

### 2.    *Nature of the Copyrighted Work*

"Under the second factor, we address two aspects of the work: the extent to which it is creative and whether it is unpublished." *Monge*, 688 F.3d at 1177 (citing *Harper & Row*, 471 U.S. at 563–64). Generally, if a work is previously unpublished, that fact is a "'key, though not necessarily determinative, factor' tending to negate a defense of fair use." *Harper & Row*, 471 U.S. at 554. "But the converse is not necessarily true." *ComicMix*, 983 F.3d at 456.

Here, there is no dispute that the Parker Photo Train was published in 2000. Defendants argue that *Seeing Fashion* is not "overly creative," as it is a chronological compilation of photographs without any analysis or commentary provided concerning the creative aspects of each photo. (Defs.' Reply at 7, ECF No. 56.) They maintain Defendants' blog was more creative, as it provided educational fashion advice. However, there is no dispute that the Parker Train Photo is a fashion photograph. Generally, photos are viewed as creative expressions and have long been the subject of copyright. *See* 17 U.S.C. § 102(a)(5). Thus, keeping in mind that this factor "typically has not been terribly significant in the overall

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07884-RGK-MBK | | Date | June 16, 2026 |
|---|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | | |

fair use balancing," this factor weighs against a finding of fair use. *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997).

> 3.    *Amount and Substantiality of the Portion Used*

For the third factor, courts examine whether the "quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (internal quotation marks omitted).

Here, Messiah posted the unaltered Parker Train Photo to her blog and thus displayed the "heart" of the Photo. *Monge*, 688 F.3d at 1178. However, the Parker Train Photo must be viewed in the context of the blog post. The Parker Train Photo is the only photo in the blog post, but it is accompanied by a question-and-answer completely independent of the Photo or the *Seeing Fashion* publication. In fact, the question-and-answer commentary does not appear to substantively reference the Photo at all. There is no doubt Messiah selected the Photo after searching for "army fashion," and the Photo can be interpreted as exhibiting just that. Still, the blog post's additions to the displayed image go beyond what is expressed in the Photo, as the blog gives educational fashion advice that does not reference the Photo. Thus, this case is unlike *Monge*, in which the Ninth Circuit found that the purpose of the article was to display the stolen wedding photos in their complete form. *See* 688 F.3d at 1180. Here, the blog post is not focused on the Parker Train Photo, but instead about giving fashion advice.

In sum, the question-and-answer commentary renders the Parker Train Photo insubstantial in context. Thus, the third factor favors a finding of fair use.

> 4.    *Effect of the Use Upon the Potential Market or Value of the Copyrighted Work*

"The final fair use factor is the effect of the use upon the potential market for or value of the copyrighted work." *Monge*, 688 F.3d at 1180 (internal quotation marks omitted). While the Supreme Court has stated that this factor is "undoubtedly the single most important element of fair use," *Harper & Row*, 471 U.S. at 566, it has since backtracked this proclamation, elaborating that, like the other factors, this one "may be addressed only through a sensitive balancing of interests." *Campbell*, 510 U.S. at 590 n.21. That is, when "the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred." *Id.* at 591. On the other hand, there is greater chance of market harm when "a commercial use amounts to mere duplication of the entirety of an original." *Id.* In other words, "when the intended use is [simply] commercial gain, the likelihood of market harm may be presumed." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 531 (9th Cir. 2008) (internal quotation marks omitted).

Undoubtedly, a market exists for the Parker Train Photo. Plaintiff licenses the Photo for fine art print sales for as much as $5,000 per license. However, Defendants' use of the Photo was also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07884-RGK-MBK | Date | June 16, 2026 |
|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | |

transformative, muting the degree of market substitution. Moreover, there is no indication that Defendants' blog post "directly competed with" or "completely usurped" Plaintiff's market for publishing and licensing the Parker Train Photo, presuming Plaintiff has such ownership rights. *Monge*, 688 F.3d at 1182. Plaintiff's market, by its own admission, is fine art, whereas Defendants' blog post served a different market function. While fair use can be negated by showing that "if the challenged use should become widespread, it would adversely affect the *potential* market for the copyrighted work," *id.* (emphasis in original), no such showing has been made here. Since the use in this case "falls within a transformative market," there is no indication that it impacted or has potential to impact the market or value of the Photo. *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 652 (9th Cir. 2020) (holding that a show choir performance's use of part of copyrighted sheet music was transformative and thus did not affect the consumer market for the sheet music).

In sum, three of the four factors favor fair use. Moreover, the lone factor that weighs against this conclusion, the nature of the copyrighted work, is generally viewed as not as important in this test. *Penguin Books*, 109 F.3d at 1402. After considering the factors on balance against the undisputed record, the Court concludes that the factors favor a finding of fair use. Accordingly, the fair use of the Parker Train Photo, regardless of ownership, is not an infringement of copyright. *See* 17 U.S.C. § 107. As fair use acts as a complete defense against copyright infringement, the Court finds summary judgement is warranted in favor of Defendants for the copyright infringement, and related willful infringement, claim.

### B.    Violations of Integrity of CMI

Next, the parties claim summary judgment is warranted in their favor for the alleged CMI violations under the DMCA. CMI includes "identifying information" about the author or copyright owner of the work "conveyed in connection with . . . displays of a work." 17 U.S.C. § 1202(c). Here, the CMI is a reference, attribution, or otherwise provision of credit to the Photographer when displaying the Parker Train Photo. Plaintiff alleges Defendants violated Sections 1202(b) and (a).[4]

Section 1202(b) prohibits either intentionally removing or altering CMI. 17 U.S.C. § 1202(b). To be liable, a defendant must know, or have reasonable grounds to know, that its actions "will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(1). Similarly, Section 1202(a) prohibits a defendant from knowingly providing false CMI with the intent to induce, enable, facilitate, or conceal infringement. *Id.* § 1202(a). Thus, both Section 1202(a) and (b) require Defendants to possess the mental state of knowing, or having a reasonable basis to know, that their actions "will induce, enable, facilitate, or conceal infringement. *Id.* §§ 1202(a), (b). Upon review of the record, there appears to be no genuine dispute that Defendants did not have the required mental state.

---

[4] The Court follows the same sequence for analysis as the parties proceeded with in their summary judgment motions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07884-RGK-MBK | Date | June 16, 2026 |
|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | |

Section 1202 is written in the future tense without a requirement that any infringement has already occurred. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018). Instead, affirmative evidence is required "from which one can infer future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI," like "by demonstrating a past 'pattern of conduct' or 'modus operandi', that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions." *Id.* at 674–75. Accordingly, a plaintiff must "offer more than a bare assertion that 'when CMI metadata is removed, copyright infringement plaintiffs . . . lose an important method of identifying a photo as infringing.'" *Id.* at 675.

Here, there is a dearth of evidence on the record that Messiah knowingly failed to credit the Photographer when she posted the Parker Train Photo on her blog, or that she did so with the intent to induce, enable, facilitate, or conceal infringement. Messiah merely found the Photo on Google Images by searching "army fashion," saving the file on her computer without altering the Photo or the filename, and then publishing the Photo on her blog. She testified that at that time, she looked for a watermark, could not find one, and had no knowledge of the Photographer. She also testified that the filename, "Melvin-Sokolsky5.jpg," was provided by the source website and she did not know it referenced the Photographer.

Plaintiff argues that there is evidence of a pattern of conduct to support finding intent. Primarily, Plaintiff points to how Defendants gave credit to another photographer in another blog post and how Messiah internally discussed Plaintiff's copyright infringement claim. However, the Court is not convinced that these facts indicate Defendants knowingly removed or provided false CMI with the intent to induce, enable, facilitate, or conceal infringement. First, isolated evidence of Defendants giving credit to another photographer in a similar blog post indicates, if anything, that Defendants *do* give credit to photographers when that information is known. Plaintiff concludes that this single blog post instead indicates Defendants deliberately omitted credit to the Photographer without any further explanation or supportive evidence of Defendants omitting similar information for other photographers. However, Plaintiff does not point to any case law to suggest that Defendants providing credit to some photos while missing credit for others indicates a pattern of deliberate conduct

Second, the internal communications from a decade later discuss Plaintiff accusing Defendants of copyright infringement and Defendants, in turn, deleting the blog post as Plaintiff requested in the cease-and-desist letter. Although these communications may indicate Defendants' opinion of the copyright infringement allegations over a decade after the blog post was published, they do not demonstrate a past pattern of conduct that would indicate Defendants knowingly removed or provided false CMI *or* that they did so with the intent to induce, enable, facilitate, or conceal infringement. Plaintiff argues that the communications indicate a systematic practice of using unlicensed images and ignoring infringement notices. However, Plaintiff fails to identify any other blog posts or use of other images that would indicate such a systematic practice exists. Because Plaintiff has not put forward

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07884-RGK-MBK | Date | June 16, 2026 |
|---|---|---|---|
| Title | *Sokolskyfilm, Inc. v. Lauren Messiah Inc. et al* | | |

evidence that Defendants knew its blog post "carried even a substantial risk of inducing, enabling, facilitating, or concealing infringement, let alone a pattern or probability of such a connection to infringement," Defendants are not liable for violations of Sections 1202(a) or (b). *Stevens*, 899 F.3d at 676.

In sum, since Plaintiff has failed to establish that there is a genuine issue of material fact regarding whether Defendants had the required state of mind under Section 1202, Defendants are entitled to summary judgment.

V.    **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment. Since summary judgment is granted and the Court did not rely on the expert report submitted, the Motion to Strike Defendant's Expert Report is **DENIED** as **MOOT**. All other pending motions are similarly **DENIED** as **MOOT**.

Defendants shall file proposed final judgment within seven (7) days of the issuance of this Order.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer            JRE/gz